**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ROM TECHNOLOGIES, INC., a Delaware corporation :<br>　　　　　　Plaintiff,　　　　　　　　　　： :<br>　　　　　　　　　　　　　　　　　　　： :<br>v.　　　　　　　　　　　　　　　　　： :<br>　　　　　　　　　　　　　　　　　　　： :<br>PALOMAR EXCESS AND SURPLUS<br>INSURANCE CO., an Arizona corporation　： :<br>　　　　　　Defendants.　　　　　　　： | Case No. _____ |

## COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT

In this insurance coverage suit, Plaintiff, ROM Technologies, Inc. ("ROM"), seeks a declaratory judgment that Defendant, Palomar Excess and Surplus Insurance Company ("Palomar"), had a duty to defend and to reimburse ROM for all defense costs incurred during an investigation of an anonymous complaint made to the United States Securities & Exchange Commission ("SEC"). The SEC terminated the investigation without finding any wrongdoing. But while the investigation lasted ROM and Insured Individuals associated with ROM were forced to hire attorneys to produce documents and comply with investigative requests. Palomar improperly refused to defend its insureds under the policy, breaching its insurance contract. Palomar is also responsible to pay prejudgment interest on defense expenses from the date of each invoice.

PALOMAR has also breached the covenant of good faith and fair dealing by unreasonably refusing to defend its insureds in contradiction of controlling Connecticut law.

## THE PARTIES

1. Plaintiff ROM is a Delaware corporation with its principal place of business in Connecticut.

2. On information and belief, Defendant Palomar is, and at all times herein mentioned was, an insurance company organized and existing under the laws of the state of Arizona and with its principal place of business in Arizona.

## JURISDICTION

3. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the parties as the Plaintiff ROM is a citizen of Connecticut and Delaware in that it is a Delaware corporation with its principal place of business in Connecticut. Defendant Palomar is a citizen of Arizona for purposes of diversity jurisdiction in that it is an Arizona corporation with its principal place of business in Arizona.

5. The amount in controversy exceeds the sum or value of $75,000 exclusive of interests and costs based on the defense expenses ROM incurred in the SEC investigation in excess of $530,000.00.

## VENUE AND CHOICE OF LAW

6. Venue is proper in the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1391 in that ROM is a citizen of this federal judicial district by virtue of its principal place of business located at 101 Silvermine Road, Brookfield, Connecticut 06804.

7. On information and belief, Palomar sells insurance and defends lawsuits in Connecticut.

8.      Palomar sold and delivered the subject policy of insurance to ROM in Connecticut.

9.      Connecticut law governs Palomar's obligations to ROM.

## THE PALOMAR POLICY

10.     Palomar issued to ROM a Directors & Officers policy (Policy Number CPPLMLP-24-0087-00) for the period from October 10, 2024 to October 10, 2025 (the "Policy"). A copy of the Policy is attached to this Complaint as **Exhibit "1."**

11.     The Policy contains the following relevant Insuring Agreements that state the scope of coverage: The "Directors, Officers and Entity Liability Coverage Section" provides, in pertinent part, as follows:

>   **Insuring Agreement A: Individual Non-Indemnified Liability Coverage**
>   The Insurer shall pay, on behalf of an **Insured Person**, **Loss** which the **Insured Person** becomes legally obligated to pay resulting from a **Claim** first made against the **Insured Person** during the **Policy Period**, or, if applicable, the **Extended Reporting Period**, for a **Wrongful Act**, but only to the extent that such **Loss** is not indemnified by an **Organization**.[1]
>   . . .
>   **Insuring Agreement C: Entity Liability Coverage**
>   The Insurer shall pay, on behalf of an **Organization**, **Loss** which the **Organization** becomes legally obligated to pay resulting from a **Claim** first made against the **Organization** during the **Policy Period**, or, if applicable, the **Extended Reporting Period**, for a **Wrongful Act**.

12.     The Policy provides the following definitions for policy terms:

>   **A. Claim** means any of the following, including, if applicable, any appeal therefrom:
>      1. a written demand against an **Insured** for monetary damages or non-monetary or injunctive relief commenced by the **Insured's** receipt of such demand;
>      . . .

---
[1] Bold terms are defined in the Policy.

4. a formal administrative or formal regulatory proceeding against an **Insured** commenced by the filing of a notice of charges, formal investigative order or similar document which names the **Insured** as a target or subject of such proceeding, but any such proceeding against an **Organization** shall constitute a **Claim** only while such proceeding is also pending against an **Insured Person**;

. . .

7. a civil, criminal, administrative or regulatory investigation of an **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a notice, target letter or other written notice form the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

. . .

9. solely for the purposes of Insuring Agreement A as set forth in **I. INSURING AGREEMENTS** of this D&O Coverage Section, and solely with respect to **Defense Costs**, any written requests or subpoena:

    a. to interview or depose an **Insured Person** in his or her capacity as such; or

    b. to produce documents by an **Insured Person** in his or her capacity as such;

whether or not the **Insured Person** who received such request or subpoena allegedly committed a **Wrongful Act**; provided that such request or subpoena (i) is not part of an examination, audit or inspection in the **Organization's** normal course of business, or general oversight or compliance activity, and (ii) shall constitute a **Claim** only if and when the **Insureds** elect to give to the Insurer written notice thereof.

**B. Defense Costs** means that part of a **Loss** consisting of reasonable and necessary costs, charges, fees (including attorneys' fees, experts' fees and **Electronic Discovery Defense Expenses**) and expenses (other than regular or overtime wages, salaries, fees or benefits of the **Insured Persons**) incurred: (i) in the defense or appeal or any **Claim**, including the premium for appeal, attachment or similar bonds, provided that the Insurer shall not be obligated to apply for or furnish such bonds, or (ii) to assist the Insurer, at the Insurer's request, in investigating a **Claim**.

. . .

**F. Insured** means any **Organization** and any **Insured Person**.
**G. Insured Persons**, either in the singular or plural, means

    1. any **Executive** or **Employee** of an **Organization**; and

> 2. any one of more natural persons described in this Clause **III. DEFINITIONS** Subparagraph **G.1.** above while serving in the **Outside Capacity.**
>
> **H. Loss** means the amount the **Insured** becomes legally obligated to pay as a result of any **Claim**, including **Defense Costs**, compensatory, punitive, exemplary or multiple damages, judgments, settlements, an award of pre-judgment interest with respect to covered damages, and civil fines or civil penalties assessed against an **Insured Person** for an unintentional or non-willful violation of law (including without limitation pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B)).
>
> . . .
>
> **K. Wrongful Act** means:
>> 1. any actual or alleged error, misstatement, misleading statement, neglect, breach of duty, omission or act committed or attempted by any **Insured Persons** in their capacity as such or in an Outside Capacity or with respect to Insuring Agreement C as set forth in Clause **I. INSURING AGREEMENTS** of this D&O Coverage Section, by the **Organization**; or
>> 2. any matter claimed against any **Insured Persons** solely by reason of their serving in such capacity or in an **Outside Capacity**.
>
> . . . .

## INITIATION OF SEC INVESTIGATION

13.     On October 26, 2024, the SEC issued an investigative "Order Directing Private Investigation and Designating Officers to Take Testimony." A copy of this SEC investigative order attached as **Exhibit "2."**

14.     Therein, the SEC alleged that "ROM Technologies, its officers, directors, employees, partners, subsidiaries and/or affiliates, and/or other persons or entities" may have violated various sections of the Securities Act and the Exchange Act.

15.     On November 24, 2024, as part of its investigation of ROM, the SEC issued a Subpoena ordering the production of documents by no later than December 9, 2024. The

5

SEC Subpoena was initially served in six separate documents which have been combined and attached as **Exhibit "3."**

## ROM'S COMMUNICATIONS WITH PALOMAR

16.     On December 3, 2024, ROM first provided notice to Palomar of the SEC investigation.

17.     On December 29, 2024, Palomar acknowledged ROM's initial notice date. A copy of Palomar's acknowledgment letter is attached as **Exhibit "4."**

18.     Palomar's acknowledgment letter also stated that Palomar "conclude[d] that no **Claim** ha[d] been asserted thus far." [**Exhibit "4,"** p. 5/5]

19.     On February 3, 2025, Palomar reiterated its denial of coverage in a follow-up letter. A copy of that letter is attached as **Exhibit "5."**

20.     Palomar again stated that the policy requirements for a "Claim" had not been satisfied [**Exhibit "5,"** p. 5/5] despite acknowledging the content of both the October 26, 2024 SEC Investigative Order and the November 24, 2025 SEC Subpoena. [**Exhibit "5,"** pp. 1–2/5]

21.     On April 9, 2025, coverage counsel for ROM submitted a letter to Palomar explaining in detail the basis for coverage and the flaws in Palomar's previous denials. A copy of that coverage analysis letter is attached as **Exhibit "6."**

22.     On May 15, 2025, having received no response, coverage counsel for ROM sent a follow-up letter to Palomar demanding an updated coverage position in light of the arguments presented in the April 9, 2025 letter. A copy of the follow-up letter is attached as **Exhibit "7."**

23. Also on May 15, 2025, counsel for Palomar acknowledged receipt of both the April 9, 2025 and May 15, 2025 letters and promised a substantive response "within 21 days, if not sooner." A copy of the email containing this acknowledgement and promise is attached as **Exhibit "8."**

24. Despite this promise, neither Palomar nor its counsel have provided any further communication as of the day of filing this Complaint, more than 185 days have elapsed since Palomar promised a response "within 21 days, if not sooner."

## CONCLUSION OF INVESTIGATION

25. On February 10, 2025, the SEC notified ROM that it had concluded its investigation and did not intend to recommend any enforcement action against ROM. A copy of this SEC notice is attached as **Exhibit "9."**

## COVERAGE ARISES FOR THE SEC INVESTIGATION

### The SEC Subpoena and SEC Order Expressly Target Insured Persons

26. Palomar's denial is primarily driven by its incorrect conclusion that only the Insured Organization, ROM Technologies, Inc., was the target of the SEC action. Contrary to Palomar's conclusions, "Insured Persons" were also targeted by the investigation, therefore triggering Palomar's defense obligations.

27. The SEC Investigative Order directs its allegations both to (1) ROM Technologies, and (2) its "officers, directors, employees." [**Exhibit "2"**]

28. The SEC Investigative Order asserts that "ROM Technologies, its officers, directors, employees, partners, subsidiaries, and/or affiliates, and/or other persons or entities" may have engaged in conduct violating several provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934. [**Exhibit "2"**]

29. The SEC Subpoena broadly defines "Rom Technologies, Inc." to include "the entity doing business under the name "Rom Technologies, Inc." ("ROMTech"), including parents, subsidiaries, affiliates, predecessors, successors, **officers, directors, employees,** agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, including but not limited to ROM3 Rehab LLC." [**Exhibit "3,"** p. 5/27 (emphasis added)]

30. Among the list of documents requested, the SEC Subpoena specifically targets documents regarding "Insured Person(s)" **SAG MBA** (an entity owned by Sanford Gomberg and his wife Marie Arnold), and also **Sanford Gomberg** and **Marie Arnold** for the period 2018 through 2024:

> 3. All correspondence between ROMTech and **SAG MBA**;
> 4. All Documents Concerning any agreement or relationship, or proposed agreement or relationship, between ROMTech and **SAG MBA**, including but not limited to all service contracts, management agreements, consulting agreements, financing agreements, and loan agreements;
> 30. All Documents and Communications Concerning **Sanford Gomberg, Marie Arnold**, or **SAG MBA**.

[**Exhibit "3,"** pp. 8/27, 10/27]

31. The SEC Subpoena therefore necessarily requires not only ROM Technologies, Inc. to respond, but also its "officers, directors, employees." Sanford Gomberg is an officer of the corporation, Vice President Corporate Affairs, and is also a director of the Insured Organization.

32. Gomberg's role as an Insured Person as officer and director of ROMTech, as well as Sanford Gomberg involvement in SAG MBA, Inc. were being investigated by the SEC, under its Investigative Order and Subpoena.

8

33. These facts satisfy the Policy's definition of "Insured Persons" meaning "any **Executive** or **Employee** of an **Organization**."

34. Consequently, the SEC Investigative Order and SEC Subpoena specifically referenced and targeted Gomberg as an "Insured Person," in addition to other Insured Persons.

### Wrongful Acts of "Insured Persons" Are Alleged

35. The SEC Investigative Order expressly alleges not only that ROM Technologies, but also its "officers, directors, employees" may have engaged in unspecified conduct violating several provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934.

36. Palomar conceded that these allegations assert a potentially covered "Wrongful Act" of ROM Technologies. [**Exhibit "5,"** p. 5/5]

37. For the same reasons, these allegations comprise "Wrongful Acts" against its "officers, directors, employees" who are "Insured Persons."

38. Thus, coverage is triggered under both Insuring Agreement A and Insuring Agreement C.

### The SEC Subpoena and SEC Order Constitute a "Claim"

39. The SEC Subpoena and SEC Investigative Order meet multiple definitions of "Claim."

40. Under definition A.1 of "Claim," which Palomar did not address, a "Claim" includes "a written demand against an Insured for monetary damages or non-monetary or injunctive relief commenced by the Insured's receipt of such demand."

9

41.     Here, the SEC Subpoena and SEC Order constitute a "written demand" for "non-monetary" relief in the form of the production of voluminous documents requiring defense attorney assistance.

42.     Under definition A.4 of "Claim," a "Claim" includes "a formal administrative or formal regulatory proceeding against an Insured commenced by the filing of a notice of charges, formal investigative order or similar document which names the Insured as a target or subject of such proceeding, *but any such proceeding against an Organization shall constitute a Claim only while such proceeding is also pending against an Insured Person.*" (Emphasis added.)

43.     Palomar incorrectly argued this definition was not met because there was no proceeding pending against an "Insured Person."

44.     However, the SEC Investigative Order and SEC Subpoena both expressly identify "Insured Persons." The SEC Order allegations are made against ROM Technologies and its directors, officers and employees, and the SEC Subpoena defines "ROM Technologies" to include its directors, officers and employees, which meet the definition of "Insured Persons."

45.     The SEC Subpoena goes even further to expressly identify Insured Persons, including Sanford Gomberg and SAG Media by name in its requests.

46.     Under definition A.7 of "Claim," a "Claim" includes "a civil, criminal, administrative or regulatory investigation of an Insured Person commenced by the service upon or other receipt by the Insured Person of a notice, target letter or other written notice from the investigating authority identifying by name the Insured Person as an individual against whom a proceeding may be commenced."

47. Same as with respect to "Claim" A.4, the SEC Investigative Order and SEC Subpoena both expressly identify "Insured Persons" as individuals against whom a proceeding may be commenced. The SEC Order allegations are made against ROM Technologies and its directors, officers and employees, and the SEC Subpoena defines "ROM Technologies" to include its directors, officers and employees, which meet the definition of "Insured Persons."

48. The SEC Subpoena goes even further to expressly identify Insured Persons, including Sanford Gomberg and SAG MBA by name in its requests.

49. Under definition A.9 of "Claim," a "Claim" includes:

> [S]olely for the purposes of Insuring Agreement A as set forth in Clause I. INSURING AGREEMENTS of this D&O Coverage Section, and solely with respect to Defense Costs, any written request or subpoena:
> a. to interview or depose an Insured Person in his or her capacity as such; or
> b. to produce documents by an Insured Person in his or her capacity as such;
>
> whether or not the Insured Person who received such request or subpoena allegedly committed a Wrongful Act; provided that such request or subpoena (i) is not part of an examination, audit or inspection in the Organization's normal course of business, or general oversight or compliance activity, and (ii) shall constitute a Claim only if and when the Insureds elect to give to the Insurer written notice thereof.

50. Palomar denied this provision as being applicable based on its incorrect determination that the SEC Investigative Order and SEC Subpoena were not directed at an Insured Person and that only ROM Technologies' records must be produced.

51. In fact, the Subpoena was directed to "Insured Persons" via their express inclusion of ROM Technologies' directors, officers and employees as targeted individuals

required to respond and by the Subpoena's express reference to Sanford Gomberg and SAG MBA.

52. Palomar's determination incorrectly assumed that only ROM Technologies' records must be produced. However, the "Insured Persons'" records must also be searched for production, including not only ROM Technologies' "officers, directors, employees," but also Mr. Gomberg and SAG MBA.

53. To comply with the Subpoena, counsel necessarily must review a mass of documents including documents held by Mr. Gomberg and other Insured Persons.

54. Because Palomar refused to defend its Insureds, ROM was obligated to retain and pay defense counsel to respond to the SEC Investigative Order and the Subpoena on its behalf and on behalf of other Insured Persons.

## CLAIM 1

### Declaratory Relief – Duty to Defend

55. ROM incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

56. A valid contract exists between ROM and Palomar, namely the Policy.

57. ROM fully performed all of the obligations and conditions to be performed by it under the Policy including paying the very substantial Policy premium.

58. By selling the Policy, Palomar agreed to provide a defense for such investigations by the SEC against its insureds that alleged "Wrongful Acts" as defined by the Policy.

59. ROM contends that the SEC Investigation alleged facts implicating potential coverage under the policy, thereby triggering Palomar's obligation to defend ROM.

60. ROM is informed and believes that Palomar disputes the foregoing contentions.

61. An actual bona fide controversy exists between ROM and Palomar that requires judicial declaration by this Court of:

(1) the parties' rights and duties under the Policy;

(2) Palomar's duty to defend ROM in the SEC Investigation; and

(3) the amount of Defense Costs owed by Palomar for the SEC Investigation.

## CLAIM 2

### Breach of Contract

62. ROM incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

63. A valid contract exists between ROM and Palomar, namely the Policy.

64. ROM fully performed all of the obligations and conditions to be performed by it under the Policy including paying the very substantial Policy premium.

65. By selling the Policy, Palomar agreed to provide a defense for such investigations by the SEC against its insureds that alleged "Wrongful Acts" as defined by the Policy.

66. ROM contends that the SEC Investigation alleged facts implicating potential coverage under the policy, thereby triggering Palomar's obligation to defend ROM.

67. Palomar has refused to acknowledge that it has an obligation to reimburse ROM for defense expenses it incurred in the SEC Investigation.

68. Palomar is obligated under the Policy to reimburse all defense expenses ROM has incurred in the SEC Investigation Action, as well as interest.

69. Palomar has not paid any amount of the money owed to ROM.

70. Palomar breached its duty to defend ROM in the SEC Investigation.

71. As a result of that breach, ROM has been damaged in an amount exceeding $75,000 in attorneys' fees and costs.

## CLAIM 3

### Breach of the Covenant of Good Faith and Fair Dealing

72. ROM incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

73. An implied duty of good faith and fair dealing is implicit in every contract, including insurance contracts.

74. This duty confers upon the insurer a duty to act reasonably when determining whether to accept or deny a claim. Palomar's repeated refusal to defend its insured was not reasonable.

75. This duty also confers upon the insurer to communicate with its insured in a timely manner. This duty is codified in Section 38a-816(6) of Connecticut General Statutes, which states insurers engage in bad faith practices by "failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies."

76. Palomar's 185 days of silence, despite promising a substantive reply "within 21 days" is one evidence of unreasonable conduct and a breach of the covenant of good faith and fair dealing.

77. Despite ample time to investigate and draft a response, Palomar has failed to substantiate a basis for its denial that responds to the points raised in ROM's April 9, 2025 coverage analysis letter.

14

78. In denying coverage, Palomar has wrongfully taken and maintained an unreasonable position and breached its implied covenant of good faith and fair dealing with its insured.

79. By doing so, Palomar has forced ROM to incur fees in order to enforce the policy benefits applicable to the SEC Investigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ROM prays for judgment against Defendant Palomar as follows:

1. A judicial declaration that Palomar had a duty to defend ROM in the SEC Investigation under the Policy.

2. A judicial declaration that Palomar breached its contractual obligations under the Policy to defend ROM in the SEC Investigation.

3. A judicial declaration that Palomar must reimburse ROM for the defense expenses ROM incurred throughout the SEC Investigation, plus prejudgment interest.

4. A judicial declaration that Palomar breached the covenant of good faith and fair dealing by unreasonably denying ROM's claim for defense fee reimbursement, failed to address the arguments raised by ROM's coverage counsel in its April 9, 2025 letter, and refused to communicate with its insured for 185 days (and counting).

5. An award for ROM's reasonable attorneys' fees and costs incurred in this lawsuit.

6. An award for pre-judgment interest at the statutory rate on all defense invoices from the date of each invoice.

7. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

ROM demands a trial by jury of all issues so triable.

Date: December 5, 2025

THE PLAINTIFF,
ROM TECHNOLOGIES, INC.

By: _____
Edward R. Scofield (ct 00455)

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard, 7th Fl.
Bridgeport, CT  06604
Tel:  (203) 333-9441
Fax: (203) 333-1489
Email:  escofield@znclaw.com

Attorneys for Plaintiff

**GAUNTLETT LAW**
David A. Gauntlett, pro hac vice
James A. Lowe, pro hac vice

5 Pelican Vista Drive,
Newport Coast, California 92657
Phone: (949) 553-1010
Fax: (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com